First National Bank of McAllen v. Commissioner.
First Nat'l Bank of McAllen v. Commissioner
Docket No. 23926.
United States Tax Court
1950 Tax Ct. Memo LEXIS 259; 9 T.C.M. (CCH) 166; T.C.M. (RIA) 50051; March 6, 1950
*259 Salaries paid directors of a bank determined. Howard J. Stafford, Jr., Esq., Bentsen Bldg., McAllen, Tex., and Orville I. Cox, Esq., for the petitioner. J. P. Crowe, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: The Commissioner determined deficiencies in income taxes for the calendar years 1946 and 1947 in the respective amounts of $3,287.38 and $3,789.50. The basis of the respondent's determination was his disallowance of deductions covering compensation paid to petitioner's board of directors during each of the taxable years. The amount paid and sought to be deducted was at the rate of $1,200 per year for each of the directors, and the amount allowed by the Commissioner was $25 per meeting or, roughly, $300 per year for each. This case was heard in San Antonio, Texas, on January 26, 1950. [The Facts] The petitioner is at present a national bank, but during the taxable years was organized and doing business under the laws of the State of Texas, and was known during those years as the City State Bank and Trust Company, with offices in McAllen, Texas. The returns for the taxable years here involved were filed with the collector *260 of internal revenue for the first district of Texas. On or about January 1, 1946, new interests acquired the ownership and control of petitioner, which interests were commonly known as the Bentsen interests. Effective with the change in ownership there was a change in the policy of operating petitioner whereby the board of directors of petitioner bank became an active board with a resultant increase in the directors' duties. This policy of having an active board of directors had been introduced in each of the banks which the Bentsen interests had acquired prior to this time. Prior to the change in ownership, the active management of petitioner was in the hands of the president of the bank who was at that time the majority stockholder thereof. During this period all loans were made by the then president of petitioner without consultation with the board of directors who merely attended a meeting once a month formally to approve the loans that had already been made. During this period petitioner suffered considerable losses from bad loans. With the assumption of control of petitioner by the Bentsen interests there was elected to membership on the board of directors of petitioner men *261 of diversified interests who were outstanding men in the community. During the years 1946 and 1947, the board of directors, other than active officers of petitioner, the number of shares of stock owned by each, the number of meetings attended by each, and the amount of directors' fees paid to each, were as follows: From 1-1-46
To 6-12-47
Number of
Regular Directors'
Shares of
Meetings Attended
Directors'
Name of Director
Stock Owned
in 1946
Fees Paid
William Cloughley
115
11
$1,200.00
E. C. Bensten
250
12
1,200.00
Owen Council
60
11
1,200.00
N. E. Buescher
18
12
1,200.00
H. Wiesehan
100
11
1,200.00
L. M. Bentsen
200
10
1,100.00
H. Etchison
100
12
1,200.00
M. R. Nelson
50
11
1,200.00
Total of Directors' Fees Paid
$9,500.00
William Cloughley
172
11
$1,200.00
E. C. Bentsen
375
12
1,200.00
Owen Council
90
9
1,000.00
N. E. Buescher
27
10
1,200.00
H. Wiesehan
150
12
1,200.00
L. M. Bentsen
375
10
1,200.00
H. Etchison
150
10
1,100.00
M. R. Nelson
75
11
1,200.00
Total of Directors' Fees Paid
$9,300.00
From January 1, 1946, to June 12, 1947, there was a total of 1,000 shares *262 of stock of the petitioner outstanding, and from June 12, 1947, to December 31, 1947, there was a total of 1,500 shares outstanding. Each of the directors of petitioner during the taxable years, in addition to attending regular monthly meetings of the board, was regularly called in conference regarding important loans being considered by petitioner. Before making important loans, it was the uniform practice of the officers of the bank to call on different members of the board of directors to make an inspection of the property offered as security and it was the duty of members of the board of directors to make the appraisals which would form the basis for the granting or denial of the loan. The directors were ranchers, farmers, canners, packers, and businessmen. If a loan were sought by a client of the bank who was engaged in the packing of foodstuffs, the members of the board who were directly familiar with that activity would be called on to inspect and appraise the property being offered as security, and if a farmer desired a loan on his farm, members of the board who were familiar with the value of farm lands made the inspection and appraisal of the property. Each director for *263 the taxable years in question spent on an average of three or four days a month performing services for petitioner and in going from place to place for the purpose of inspecting and valuing property. The directors used their own automobiles in connection with petitioner's business and received no reimbursement for their expenses incident to the use of their own cars. The directors' fees as paid were duly authorized by formal resolution adopted by the board of directors at its first regular meeting in each of the taxable years in question. There was no relationship whatsoever between the amount paid to the directors and the stock owned by them. Those directors owning only a few shares of stock received the same fees as those owning the controlling interests. The fees paid were for all services rendered and were not merely for attendance at the board of directors' meetings. There was a substantial increase in the loans and discounts of petitioner during the taxable years in question and, after paying all expenses, including directors' fees, there was left with the petitioner a return of from 15 to 18 per cent on its capital investment during the taxable years. [Opinion] A number *264 of witnesses were produced by the petitioner at the hearing who testified to the reasonableness of the compensation paid by petitioner to the members of its board of directors. No testimony was offered by the respondent that had any probative weight in support of his determination that the directors' fees as paid were unreasonable. At the conclusion of the hearing of this case, this Division of the Court held that the salaries as paid the members of the board of directors were reasonable in amount and were deductible in determining petitioner's net income for the years in question, and in its opinion from the bench stated as follows: "While the deficiencies as determined by the Commissioner come to this Court as presumptively correct, once the record is made in open Court, a decision must be reached on the testimony as it appears. "After the Bentsens came into control of the Petitioner, they inaugurated a new method of handling its business, and the changed method was in accordance with the method followed by the Bentsens in some four or five other banks that they controlled. The new method was to substantially lodge in the Board of Directors the responsibility for all substantial *265 loans made by the bank, rather than leaving that responsibility with the officers of the bank. Under the new system, the Board of Directors was distinctly a working board, and the directors were constantly called upon to pass on the desirability of loans, to examine and appraise property on which loans were sought, and so forth. Now, this method was quite contrary to the old method where the directors met and did little more than approve the action theretofore taken by the officers. "The stockholders, and particularly the controlling stockholders, were of the opinion that the proposed change in procedure was highly desirable and that the amounts paid to the directors were reasonable. It's clear that the amounts paid were not in accordance with stock ownership for it appears that a stockholder owning only eighteen shares in 1946 received the same director's fee as a stockholder owning 250 shares, and that in the year 1947 a director-stockholder owning 27 shares received the same director's fees as paid to a stockholder owning 375 shares. "We also have testimony of a banker here in San Antonio, that he thought the amount paid to the directors of Petitioner was reasonable, and as *266 near as I could gather from his testimony, his bank was paying to its directors a sum substantially equal to what was paid by Petitioner. Moreover, in the case of the San Antonio bank, it was using outsiders to make its appraisals, a service performed by the directors of Petitioner's bank. Now, these people are having the directors do, you might say, most of the work that other banks might use outsiders to do. And it seems to me, taking the record as it stands, and with no testimony of any government witness that these amounts are unreasonable, the Petitioner has made a prima facie case, and my opinion is that the amounts paid to the directors during the years 1946 and 1947 are a reasonable amount and deductible under the statute." Decision will be entered under Rule 50.